IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT TOWNSEND,<br><br>    *Plaintiff*,<br><br>v.<br><br>ALEX AZAR II, in his official capacity as the Secretary of the Department of Health and Human Services,<br><br>    *Defendant.* | Case No. 20-cv-01210-ALC<br><br>(Hon. Andrew L. Carter) |

**PLAINTIFF'S SUPPLEMENT TO HIS MOTION FOR SUMMARY JUDGMENT/OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Robert Townsend writes to apprise the Court of developments in other cases and information recently revealed by the Secretary that has bearing on the pending motions. At issue in the pending motions is the Secretary's allegation that it would be unfair to apply collateral estoppel against the Secretary. In particular, the Secretary has represented:

> [I]t is impracticable for the Secretary to litigate thousands of Medicare claim appeals filed each year at the ALJ level. 42 C.F.R. §§ 405.1010(a), 405.1012(a). *See* U.S. Government Accountability Office Report at 1, 12 (May 2016), https://www.gao.gov/assets/680/677034.pdf (last visited April 17, 2020); *see also* 82 Fed. Reg. 4974, 4976 (Jan. 17, 2017) (noting that there were 650,000 pending ALJ appeals as of September 2016); *Am. Hosp. Assoc. v. Azar*, 14-cv-851, Dkt. No. 96 (Mar. 25, 2020 Status Report) (for FY 2018, over 575,000 ALJ appeals pending and over 60,000 ALJ appeals received).

*See* Dkt. #21 at 22.

> This ignores the fact that there are thousands of Medicare claim appeals filed each year at the ALJ level, and the Secretary would not know at the outset whether a given ALJ decision would be unfavorable. *See* U.S. Government Accountability Office Report at 1, 12 (May 2016), https://www.gao.gov/assets/680/677034.pdf (last visited April 17, 2020); *see also* 82 Fed. Reg. 4974, 4976 (Jan. 17, 2017) (noting that there were 650,000 pending ALJ appeals as of September 2016); *Am.*

> *Hosp. Assoc. v. Azar*, 14-cv-851, Dkt. No. 96 (Mar. 25, 2020 Status Report) (for FY 2018, over 575,000 ALJ appeals pending and over 60,000 ALJ appeals received).

*See* Dkt. #25 at 11-12.

> [I]t is simply not feasible for the Secretary to participate in each of the thousands of Medicare claims appeals filed each year in order to preserve the opportunity to challenge an adverse decision. … This is true despite Plaintiff's quibble that the number of ALJ appeals filed in FY 2019 (43,887) is slightly lower than the number filed in FY 2018 (approximately 60,000).

*See* Dkt. #32 at 8.

Thereafter, Plaintiff demonstrated that the Secretary's representations were false because *the Secretary* was simultaneously representing to another court that the true number of ALJ appeals filed in the preceding year was ~44,000. *See* Dkt. #27 at 21-22. Further, Plaintiffs noted that, under the Secretary's own regulations, in beneficiary appeals the Secretary may only appear as a party, cross-examine witnesses, etc. if the beneficiary is represented. *See, e.g.,* 42 C.F.R. § 405.1012. As noted by Plaintiff, the Secretary has published no data on the number of beneficiary appeals where the beneficiary is represented. That said, the Secretary had published data indicating that ~5,000 beneficiary appeals (both represented and unrepresented) were filed in FY2019. *See* Dkt. #27 at 22.

In response, the Secretary did not withdraw his prior representations or argument. Instead, the Secretary doubled down on his argument that it is purportedly not feasible to participate in ALJ hearings generally, "despite Plaintiff's quibble that the number of ALJ appeals filed in FY 2019 (43,887) is slightly lower than the number filed in FY 2018 (approximately 60,000)." *See* Dkt. #32 at 8. Thus, the Secretary never revealed the number of beneficiary appeals filed where the beneficiary was represented and the Secretary was actually permitted to appear.

In other pending cases, the Secretary made the same arguments but resisted the plaintiff's efforts to discover the number of ALJ appeals where the beneficiary was represented. In particular,

2

the Secretary sought protective orders in *Piekanski v. Azar*, Case No. 20-cv-687 (M.D. Pa.); *Wilmoth v. Azar*, Case No. 20-cv-120 (N.D. Miss.); and *Thumann v. Azar*, Case No. 20-cv-125 (S.D. Ohio).  The Secretary's effort to keep this information concealed ended up requiring motion practice in two courts (*Piekanski* and *Wilmoth*) and hearings before judges in two courts (*Wilmoth* and *Thumann*).  Ultimately, one court (*Piekanski*) stayed all discovery before deciding that the issue was moot because the court held that the Secretary's actions were not supported by substantial evidence in any event.  Two other courts (*Wilmoth* and *Thumann*) ordered the Secretary to produce the information of the number of ALJ appeals filed in FY2018 and FY2019 where the beneficiary was represented.

Finally, on October 27, 2020, the Secretary served interrogatory answers indicating that in FY2019, the number of ALJ appeals filed where the beneficiary was represented (and the Secretary, therefore, was permitted to participate) was 2,602—nationwide.  *See* Exhibit A.  Thus, rather than the Secretary appearing "as a party in over 400,000 Medicare claim appeals that are filed each year at the ALJ level", the Secretary appearing as a party in the ~44,000 ALJ appeals filed each year, or the Secretary appearing as a party in the ~5,100 beneficiary appeals filed each year, the Secretary could have actually appeared in a maximum of 2,602 represented beneficiary appeals filed at the ALJ level in FY2019.  To put that in context, 2,602 is only 0.45% of the 575,000 appeals represented to the Court by the Secretary and only 4.3% of the 60,000 appeals alternatively represented to the Court by the Secretary.  To further put that in context, on average that is 50 represented beneficiary appeals filed each week (*i.e.*, one per week from each State in the nation).

Further, the Secretary has published data indicating that in FY2019 more than 54% of the appeals filed were dismissed (*e.g.*, as untimely or due to the death of the beneficiary).[1] Multiplying this dismissal rate by the number of represented beneficiary appeals and subtracting that from the total, results in 1,415 represented beneficiary appeals. That is, in only 1,415 cases an ALJ hearing was presumably held (or the decision issued "on the record") and a decision actually issued. To put that in context, on average that is 27 ALJ hearings per week.

To be clear, these are the maximum number of ALJ hearings the Secretary could appear in, if he so chose. Alternatively, the Secretary could rely on the fact that the beneficiary bears the burden of proof and choose not to attend (as he did in Mr. Townsend's cases). As Plaintiff has pointed out, even in the cases where the Secretary chooses not to appear, the Secretary can appeal a negative decision on so-called "own motion review."

Plaintiff believes that this is all irrelevant because the Supreme Court affirmed the application of collateral estoppel against the government knowing that the United States was (at that time) a party to ~33% of all litigation in the United States. *See U.S. v. Mendoza*, 464 U.S. 154, 159-60 (1984). Thus, whatever the number of appeals, the Secretary is still subject to collateral estoppel. Nevertheless, the information the Secretary was ordered to provide belies the Secretary's factual claims in this case.

Now that the true number of represented beneficiary ALJ appeals has been revealed, it strains credulity for the Secretary to argue that it "would be impracticable" for the Secretary to appear and/or that it would be unfair for the Secretary to be bound by collateral estoppel.[2]

---

[1] See https://www.hhs.gov/about/agencies/omha/about/current-workload/decision-statistics/index.html (last visited October 28, 2020).
[2] By way of background, Parrish Law Offices is a three-attorney law firm, where only two attorneys primarily handle Medicare ALJ hearing requests and the hearings themselves. In FY2019, Parrish Law Office filed 502 requests for ALJ hearings on behalf of beneficiaries.

Dated:  November 18, 2020                                  Respectfully submitted,

/s/ *Geoffrey G. Young*
**REED SMITH LLP**
Geoffrey G. Young
599 Lexington Avenue
New York, NY 10022
(212) 521-5400


*Attorney for Plaintiff*

---

Further, in FY2019, Parrish Law Office participated in 472 actual ALJ hearings on behalf of beneficiaries.  On average, the ALJ hearings last 30 minutes each.  *See* Exhibit B.

## CERTIFICATE OF SERVICE

I, Geoffrey G. Young, certify that a true and correct copy of the foregoing Plaintiff's Supplement to his Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment and its accompanying exhibits was filed electronically on November 18, 2020, is available for viewing and downloading from the federal court's ECF/CM system, and will by automatically served upon registered counsel of record by ECF/CM.

*/s/ Geoffrey G. Young*
Geoffrey G. Young